UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **PEACOCK JEWELERS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Case No. 3:21-cv-00445 |
| | ) | Judge Aleta A. Trauger |
| **JEWELERS MUTUAL INSURANCE** | ) | |
| **COMPANY, SI** | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM & ORDER

Jewelers Mutual Insurance Company, SI ("Jewelers Mutual") has filed a Motion in Limine to Exclude Certain Testimony and Opinions of Plaintiff's Expert, Stephen L. Strzelec (Doc. No. 39), to which Peacock Jewelers, LLC ("Peacock") has filed a Response (Doc. No. 55). For the reasons set out herein, the motion will be granted in part and denied in part.

## I. ISSUES

Peacock alleges that Jewelers Mutual (1) breached its duty, as Peacock's insurer, to pay for a covered loss and (2) mishandled the underlying claim in violation of Tennessee's "bad faith refusal to pay" statute, which imposes increased liability on insurers who fail to process meritorious insurance claims timely and in good faith after receiving a formal demand for payment. *See* Tenn. Code Ann. § 56-7-105. Strzelec is a consultant and former insurance industry professional whom Peacock intends to call as an expert on various issues of insurance industry practice that, Peacock argues, are relevant to its claims.

Jewelers Mutual does not dispute that expert testimony about the insurance industry may be relevant to the consideration of whether an insurer engaged in a bad faith refusal to pay. Jewelers Mutual also does not dispute Strzelec's general qualifications to give that testimony, his having

held various positions at State Farm Insurance Companies over the course of nearly twenty years. (*See* Doc. No. 39-1 at 32.) However, Jewelers Mutual has identified several aspects of Strzelec's opinions expressed in depositions, his Initial Expert Report, and his Rebuttal Report that, Jewelers Mutual argues, should not be permitted to be included in his testimony at trial:

1. "All references to dishonesty, deceit, holding back information and the like";
2. "All references to any alleged deficiency in the denial letters submitted by Jeweler's Mutual to the insureds";
3. "All criticism of Jewelers Mutual's consideration of and follow-up on Rose Melillo's unsigned Affidavit;
4. "All testimony regarding what Mr. Strzelec personally would have done if handling the claim at issue";
5. "All references and commentary and opinion premised on a conclusion that additional video footage would have proven the alleged loss as opposed to a misrepresentation";
6. "All commentary and opinion testimony where [Strzelec] speculates that the insureds were speculating about what occurred on July 11, 2020";
7. "All references to, summaries of, and other commentary on the law";
8. "All references to, summaries of, and other commentary and/or citations to Insurance Industry Literature and Texts 'not relied on by the expert' under Fed. R. Evid. 803(18)";
9. "All discussion contained in entire sections of the Strzelec Report that are wholly irrelevant," namely certain discussions of "lower loss ratios," "disgorgement," deterrence amounts," "insurer's wealth," or "claims profit."

(Doc. No. 39 at 2–12.) Peacock has conceded, in its Response, that it will not attempt to present trial testimony on Issues 1, 4, 8, or 9. Moreover, Peacock has now filed a proposed Expert Witness Statement that permits the court to focus on his actual anticipated testimony, rather than simply what he said during his deposition or in his reports. (Doc. No. 51.) The court, accordingly, will grant requests 1, 4, 8, and 9 as uncontested—even though that ruling should not necessitate revision of the proposed testimony—and will focus on issues 2, 3, 5, 6, and 7 as they apply to the proposed testimony found in the Expert Witness Statement.

2

## II. ANALYSIS

### Issue 2: The Denial Letters

Jewelers Mutual argues that Strzelec's opinions regarding alleged deficiencies in Jewelers Mutual's denial letters to Peacock should be excluded because Strzelec, in Jewelers Mutual's interpretation, withdrew those critiques during his deposition. Specifically, Jewelers Mutual argues that Strzelec conceded that deficiencies he identified in Jewelers Mutual's December 10, 2020 denial letter were rectified in a subsequent letter of December 16, 2020. Although the discussion of the relevant issues in the Expert Witness Statement is relatively brief, Peacock concedes that it does still intend to present some testimony regarding "the lack of compliance of the December 10, 2020 denial letter with industry standards and Tennessee Regulations." (Doc. No. 55 at 2.)

The court will address how and to what extent Strzelec can testify regarding issues of law in connection with Issue 7. Otherwise, however, this objection is unpersuasive. Jewelers Mutual has not identified any formal withdrawal of Strzelec's opinions regarding the December 10 letter, and, insofar as he (1) appears to have backed down from aspects of his original analysis during his deposition and (2) bases his opinion in part on disregarding the second letter, those issues can be appropriately addressed through cross examination, if Jewelers Mutual so chooses. The court, however, will not exclude Strzelec's opinions regarding the letter.

### Issue 3: Jewelers Mutual's Treatment of the Melillo Affidavit

A Jewelers Mutual claims handler testified during his deposition that he did not grant much weight to an affidavit submitted by an alleged eyewitness, Rose Melillo, because it was unsigned. Strzelec criticized this practice in his Initial Report and deposition testimony. Jewelers Mutual argues, however, that he also conceded that that criticism would not hold if Jewelers Mutual

appropriately followed up on the underlying assertions, which Jewelers Mutual says it did. The Expert Witness Statement mentions the Melillo issue in passing, without much specific criticism, but it does mention Melillo's affidavit and the low weight that Jewelers Mutual afforded it.

As with Issue 2, Jewelers Mutual is treating a potential basis for impeachment as if it is a ground for exclusion, which it is not. The court will permit Strzelec to testify as to the handling of the Melillo affidavit and whether Jewelers Mutual, in his opinion, gave insufficient weight to witness statements, at least to the limited degree contemplated by the Expert Witness Satement.

### Issue 5: Contents of Unavailable Video Footage

Central to this case is Peacock's allegation that Jewelers Mutual erred in failing to seek out and obtain additional video evidence in a timely manner. That evidence was ultimately lost before Jewelers Mutual could review it. Jewelers Mutual argues that Strzelec has offered opinions that improperly assume the contents of the video. Jewelers Mutual bases this request for exclusion on the following language from Strzelec's Initial Expert Report (emphasis and omissions by Jewelers Mutual):

> If Jewelers Mutual had made a reasonable attempt to obtain the video footage from the loss from prior to the suspect coming into the store until he left and was no longer visible outside the store, ***the other loss*** [meaning the approximate $500K in loose diamonds] would have been documented to the satisfaction of Jewelers Mutual. . . .
>
> [T]here would have been ***no basis for denying the loss if*** Jewelers Mutual had timely investigated the loss and secured the video footage they believed was necessary to document the loss and what actually occurred.

(Doc. No. 39 at 6 (quoting Doc. No. 39-1 at 31).) Jewelers Mutual argues that such testimony improperly "assumes that if additional footage was available, it would negate the finding of a misrepresentation and prove the" compensability of the claimed loss. (*Id.*)

4

In Peacock's Response, it explains that Strzelec "will not testify at trial that the video footage will prove the loss or prove a misrepresentation"—which he cannot do because the contents of the video are unknown—but will instead merely state that Jewelers Mutual's "'failure to procure the necessary video footage in a timely manner was the clear fatal error that prevented Jewelers Mutual from completing a reasonable investigation.'" (Doc. No. 55 at 4 (quoting Doc. No. 51 at 12).) A review of the proposed Expert Witness Statement provided by Peacock after the Motion in Limine was filed confirms that the potentially confusing or misleading language found in Strzelec's initial Report does not appear in the proposed testimony. The court accordingly will grant the request to bar any testimony by Strzelec suggesting that the unavailable video would have supported Peacock's position, although that exclusion will not require alteration of the proposed testimony.

**Issue 6: Mental State of Peacock's Owners**

Jewelers Mutual argues that Strzelec has, on several instances, made statements that appear to express an opinion regarding the mental state of Peacock's owners as they navigated the claims process. Much of the offending language has been omitted from the Expert Witness Statement, but that proposed testimony does still include at least one passage exhibiting the same alleged deficiency. Specifically, Strzelec writes that Jewelers Mutual corporate representative John Ganga's "testimony reflects two insureds (the owners of Peacock Jewelers, Joey Nunley and Paul Wilson) [who] did not know what had occurred and are simply trying to connect the dots as they are disclosed." (Doc. No. 51 at 10.) Strzelec's expertise on the practices of the insurance industry, however, does not qualify him to make factual statements about the subjective state of mind of Wilson and Nunley, particularly given that they were policyholders, not insurance industry professionals themselves.

5

In Peacock's Response, it argues that Strzelec's statements regarding the owners' state of mind are based on their own testimony. If anything, though, that merely highlights the fact that it is inappropriate for Strzelec to, in essence, vouch for the truth of that testimony. Moreover, it is not clear to the court why the actual mental state of Peacock's owners is even within the scope of matters relevant to Strzelec's opinions and expertise. The reasonableness of Jewelers Mutual's handling of Peacock's claim depends on facts that Jewelers Mutual actually knew or could have known. Those facts may have included *evidence* of the owners' state of mind, but their *actual* contemporaneous beliefs and motivations are not within the scope of either what Jewelers Mutual could have considered or what Strzelec, through his expertise, could know. The court accordingly will exclude any opinions as to the state of mind of Peacock's owners, including the passage quoted above, in its current form. Strzelec may, however, testify regarding his opinion on how an insurer should respond to particular evidence or manifestations of state of mind.

**Issue 7: Matters of Law**

Finally, Jewelers Mutual argues that Strzelec has, at various times, improperly testified regarding issues of law by quoting and/or summarizing certain Tennessee statutes, regulations, and caselaw. "[O]nly the [c]ourt may determine the applicable law in [a] case," and, if it is a jury case, "the [c]ourt alone instructs the jury as to that law." *Heil Co. v. Evanston Ins. Co.*, No. 1:08-CV-244, 2013 WL 11322818, at *1 (E.D. Tenn. Feb. 15, 2013). Accordingly a witness, whose role in litigation is to provide facts—or, in the case of an expert, opinion— "may not testify to a legal conclusion." *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 322 (6th Cir. 2014) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994)).

There is a difference, however, between the legal question of what the law requires and the factual question of how companies regulated by that law respond to its edicts. For example, no

6

witness can tell the court what duties a party has under a statute; a witness may, however, be able to tell the court quite a bit about how perceived duties under that law are fulfilled by ordinary members of the relevant industry. Such testimony may be particularly helpful (albeit also particularly difficult to separate from improper legal conclusions) in cases involving industries with an inescapably legal character—such as insurance, which consists, at its base, of the sale and purchase of contractual rights and duties.

As with other issues that Jewelers Mutual has raised, the timing of Peacock's proposed Expert Witness Statement means that some of the specifically objected-to language cited in the motion has been omitted from the actual anticipated testimony and/or cleaned up to resolve problematic ambiguities. Nevertheless, Peacock still seeks to present testimony that discusses provisions of Tennessee's Unfair Claims Practices and Unfair Claims Settlement Act, Tenn. Code Ann. §§ 56-8-101 to -113. Peacock argues that such testimony is necessary to "explain industry standards for the handling of insurance claims." (Doc. No. 55 at 5.) Specifically, Peacock points out that Strzelec's testimony on this topic is not primarily about the Tennessee statute in isolation, but rather about the underlying model legislation drafted by the National Association of Insurance Commissioners that provided the basis for the relevant provisions. That model legislation, Peacock argues, reflects industrywide norms and standards relevant to its claims.

Peacock's argument that Strzelec should be permitted to discuss the model legislation is persuasive. That does not, however, mean that it is necessary to discuss Tennessee's particular version of that legislation in detail—including by citing additional regulations promulgated to support the Act, as Strzelec seeks to. Framing Strzelec's testimony specifically in relationship to Tennessee's statute comes close to rendering legal opinion in a way that cannot be justified by Peacock's stated purpose. The fact that many states, including Tennessee, have adopted versions

7

of the model legislation is relevant to the weight that can be afforded to the standards of business set forth therein. Aside from that fact, though, if Strzelec's purpose is simply to discuss those standards, he can do so in the context of the model legislation—not, specifically, the relevant Tennessee statutes. The court accordingly will grant this aspect of Jewelers Mutual's request in part and require Strzelec to either omit the relevant passage or revise it to focus on the model legislation. If Peacock chooses the latter route, however, the court will not bar Strzelec from mentioning that some provisions of the model legislation have been adopted in Tennessee.

### III. CONCLUSION

For the foregoing reasons, Jewelers Mutual's Motion in Limine to Exclude Certain Testimony and Opinions of Plaintiff's Expert, Stephen L. Strzelec (Doc. No. 39) is hereby **GRANTED** in part and **DENIED** in part. Any testimony by Strzelec on the following topics is hereby **EXCLUDED**:

- Dishonesty, deceit, or holding back information by Jewelers Mutual;
- What Strzelec personally would have done if handling the claim at issue;
- Any opinion premised on the assumption that the missing video footage would have vindicated one particular contested position;
- The state of mind of Peacock's owners;
- The content of specific Tennessee statutory and regulatory duties under the Unfair Claims Practices and Unfair Claims Settlement Act and implementing regulations;
- The objected-to materials included in Exhibit E to Strzelec's Original Expert Report;
- The objected-to materials included in the "Claims Financial Information" and "Claims Profit" sections of Strzelec's Original Expert Report.

This Order should not be construed to prevent Strzelec from testifying regarding the model Unfair Claims Practice Act or acknowledging that a version of that model legislation has been adopted in Tennessee. Rather, Strzelec is forbidden only from asserting specific principles as binding

8

Case 3:21-cv-00445   Document 65   Filed 11/03/22   Page 8 of 9 PageID #: 1087

Tennessee law. The parties are **ORDERED** to confer in an attempt to agree to revisions to Strzelec's proposed testimony consistent with this Order.

    It is so **ORDERED**.

                                                                                       ALETA A. TRAUGER
                                                                                   United States District Judge